# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

CHAMBERS OF
SUSAN K. GAUVEY
U.S. MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
MDD_skgchambers@mdd.uscourts.gov
(410) 962-4953
(410) 962-2985 - Fax

January 4, 2012

Paul W. Nolan, Esq.
Thurlow and Nolan PA
P.O. Box 512
Phoenix, MD 21131

Alex S. Gordon, Esq.
Assistant United States Attorney
36 South Charles Street, 4th Floor
Baltimore, MD 21201

>      Re:  Jill Baxter v. Michael J. Astrue, Commissioner, Social
>      Security, Civil No. SKG-10-3048

Dear Counsel:

Plaintiff, Jill Baxter, by her attorney, Paul W. Nolan,

Esq., filed this action seeking judicial review, pursuant to 42

U.S.C. § 405(g), of the final decision of the Commissioner of

the Social Security Administration ("the Commissioner"), who

denied plaintiff's claim for Disability Insurance Benefits

("DIB") under Title II of the Social Security Act ("the Act").

42 U.S.C. § 405(g).  This case has been referred to the

undersigned magistrate judge by consent of the parties pursuant

to 28 U.S.C. § 636(c) and Local Rule 301. (ECF No. 8; ECF No. 9;

1

ECF No. 10).

Currently pending before the Court are cross motions for summary judgment. (ECF No. 19; ECF No. 24). No hearing is necessary. Local Rule 105.6. For the reasons that follow, the Court hereby DENIES plaintiff's motion for summary judgment (ECF No. 19), DENIES defendant's motion for summary judgment (ECF No. 24), and REMANDS this case for further proceedings consistent with this opinion.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for DIB on October 23, 2006, alleging that she became unable to work starting on July 14, 2005 due to "anxiety, depression, gastrointestinal [sic], panic disorder, Barretts esophagus, chronic acid reflux, irritable bowel syndrome, and bile gastritus." (R. 127). Plaintiff's application was denied at the initial and reconsideration levels. (R. 52-55, 57-58). Thereafter, plaintiff had an administrative hearing on December 17, 2008. (R. 22-56). On April 1, 2009, the Administrative Law Judge ("ALJ") denied plaintiff's claim. (R. 10-21). On October 14, 2010, the Appeals Council denied plaintiff's request for review, making the ALJ's opinion the final decision of the agency. (R. 1-3). On October 28, 2010, plaintiff filed this action, seeking review of that final decision pursuant to 42 U.S.C. § 405(g).

2

## II.  FACTUAL BACKGROUND

The Court has reviewed defendant's Statement of Facts, finding it generally accurate.[1] However, the statement omits discussion of the treatment history and treatment notes of Plaintiff's long-time treating psychiatrist, Dr. Grace-Lee.  Instead, defendant's statement of facts simply reports Dr. Grace-Lee's conclusions.  Thus, the Court includes a discussion of Plaintiff's treatment history with Dr. Grace-Lee below.

Plaintiff began outpatient treatment with Dr. Grace-Lee in 1992, when Plaintiff's first symptoms of depression began. (R. 268, 313).  Plaintiff continued to see Dr. Grace-Lee from 1992 until at least the date of the hearing (December 17, 2008).  (R. 34, 267).  She saw Dr. Grace-Lee on a regular basis, with frequency ranging from once every two months, to once every month, to once every three to four weeks.  (R. 268, 313, 353-366).

The record includes Dr. Grace-Lee's treatment notes taken between March 26, 2004 and September 24, 2008. (R. 353-366). The treatment notes indicate that Plaintiff had good days and bad days.  Defendant's statement of facts highlights most of

---

[1] Plaintiff does not contest the facts as presented by Defendant; nor does Plaintiff present her own statement of facts.

Plaintiff's good days, but omits many of Dr. Grace-Lee's notations of Plaintiff's depression symptoms on other days. Those notations include the following:

On February 12, 2005, Dr. Grace-Lee reported that Plaintiff's mood was affected by multiple stressors, including job loss concerns and Plaintiff's mother's health. (R. 355). On June 14, 2006, Plaintiff reported that she had trouble sleeping at night. (R. 298). On November 7, 2006, Dr. Grace-Lee noted that Plaintiff felt overwhelmed and was "unable to do much in terms of work." (R. 297). On February 27, 2007, Dr. Grace-Lee noted that plaintiff felt anxious and overwhelmed. (R. 295). On May 29, 2007, plaintiff again reported to Dr. Grace-Lee that she was overwhelmed, and Dr. Grace-Lee prescribed Plaintiff lamictal. (Id.). On August 1, 2007, Dr. Grace-Lee observed that Plaintiff had "no motivation" and had "good days" followed by "days with low mood." (R. 294). She also stated that Plaintiff is "[u]nable to do work of any kind" and has "limited activities." (Id.). On September 4, 2007, Dr. Grace-Lee noted that Plaintiff had slowed concentration and focus. (R. 362). On October 2, 2007, Plaintiff told Dr. Grace-Lee that she felt antsy and had trouble falling asleep. (Id.). On October 30, 2007, Dr. Grace-Lee indicated that Plaintiff was "[d]epressed[,]" "tearful" and "overwhelmed." (R. 363). On November 27, 2007, Dr. Grace-Lee

reported that Plaintiff was "[r]eactive to every day stressors[,]" was "[e]asily overwhelmed[,]" and "[e]asily fatigued." (Id.). On January 22, 2008, plaintiff told Dr. Grace-Lee that she always felt nervous. (R. 364). On May 13, 2008, Dr. Grace-Lee noted that Plaintiff had a restricted affect and a depressed mood. (R. 365). Finally, on September 24, 2008, Plaintiff appeared tearful and reported to Dr. Grace-Lee that she had been in bed for five days because of her depression. (R. 366).

Dr. Grace-Lee noted in a letter to Plaintiff's counsel that Plaintiff's depression and anxiety worsened over the course of her treatment "despite multiple medication trials and combinations of medicines." (R. 346).

### III. ALJ'S FINDINGS

In evaluating plaintiff's claim for DIB, the ALJ was required to consider all of the evidence in the record and to follow the sequential five-step evaluation process for determining disability, set forth in 20 C.F.R § 416.920(a).[2] If the agency can make a disability determination at any point in

---

[2] Disability is defined in the Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A) (2004).

the sequential analysis, it does not review the claims further.

20 C.F.R. § 1520(a). After proceeding through all five steps,

the ALJ in this case concluded that plaintiff was not disabled

as defined by the Act. (R. 21).

The first step requires plaintiff to prove that he is not

engaged in "substantial gainful activity."[3]  20 C.F.R. §

416.920(a)(4)(I).  If the ALJ finds that plaintiff is engaged in

"substantial gainful activity," plaintiff will not be considered

disabled.  Id.  Here, the ALJ determined that, although the

plaintiff did work after the onset of the established

disability, that work activity did not rise to the level of

substantial gainful activity. (R. 12).

At the second step, the ALJ must determine whether

plaintiff has a severe, medically determinable impairment or a

combination of impairments that limit plaintiff's ability to

perform basic work activities.  20 C.F.R. §§ 404.1520(c),

416.920(c); see also 20 C.F.R. §§ 404.1521, 416.921.  There is

also a durational requirement that plaintiff's impairment last

---

[3] Substantial gainful activity is defined as "work activity that
is both substantial and gainful."  20 C.F.R. § 416.972.  Work
activity is substantial if it involves doing significant
physical or mental activities and even if it is part-time or if
plaintiff is doing less, being paid less, or has fewer
responsibilities than when he worked before.  20 C.F.R. §
416.972(b).  Substantial gainful activity does not include
activities such as household tasks, taking care of oneself,
social programs, or therapy.  20 C.F.R. § 416.972(c).

or be expected to last for at least 12 months.  20 C.F.R. §

416.909.  Here, the ALJ determined that plaintiff has the

following severe impairments: (1) esophagitis/gastritis; (2)

shoulder impairment; and (3) anxiety/depression. (R. 12).

However, the ALJ found no evidence of a severe gynecological

impairment. (R. 13).

At step three, the ALJ considers whether plaintiff's

impairments, either individually or in combination, meet or

equal an impairment enumerated in the "Listing of Impairments"

("LOI") in 20 C.F.R. § 404, Subpart P, Appendix 1.  20 C.F.R. §

416.920(a)(4)(iii). In this case, the ALJ found that plaintiff's

impairments did not meet or equal listed impairments. (R. 14).

Before an ALJ advances to the fourth step, he must assess

plaintiff's "residual functional capacity" ("RFC"), which is

then used at the fourth and fifth steps.  20 C.F.R. §

404.1520(a)(4)(e).  The RFC is an assessment of an individual's

ability to do sustained work-related physical and mental

activities in a work setting on a regular and continuing basis.

SSR 96-8p.  The ALJ must consider even those impairments that

are not "severe."  20 C.F.R. § 404.1520(a)(2). In determining a

plaintiff's RFC, ALJs evaluate the plaintiff's subjective

symptoms (e.g., allegations of pain) using a two-part test.

Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996); 20 C.F.R. §

404.1529. First, the ALJ must determine whether objective evidence shows the existence of a medical impairment that could reasonably be expected to produce the actual alleged symptoms. 20 C.F.R. § 404.1529(b). Once the claimant makes that threshold showing, the ALJ must evaluate the extent to which the symptoms limit the claimant's capacity to work. 20 C.F.R. § 404.1529(c)(1). At this second stage, the ALJ must consider all the available evidence, including medical history, objective medical evidence, and statements by the claimant. 20 C.F.R. § 404.1529(c). The ALJ must assess the credibility of the claimant's statements, as symptoms can sometimes manifest at a greater level of severity of impairment than is shown by solely objective medical evidence. SSR 96-7p, 1996 SSR LEXIS 4.

Here, the ALJ determined that plaintiff has the following residual functional capacity. (R. 15-20). Plaintiff can "perform light work as defined in 20 C.F.R. § 404.1567(b) except she is unable to perform overhead reaching" and "she is limited to routine, repetitive tasks with only incidental public contact." (R. 16). Applying the two-step test for evaluating subjective symptoms, the ALJ found that, although plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[,]" plaintiff's "statements concerning the intensity, persistence and limiting effects of

8

these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (R. 18).

At the fourth step, the ALJ must consider whether plaintiff retains the RFC necessary to perform past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). The ALJ here determined that plaintiff is unable to perform her past relevant work as a legal secretary. (R. 20).

Where, as here, plaintiff is unable to resume her past relevant work, the ALJ must proceed to the fifth and final step. This step requires consideration of whether, in light of vocational factors such as age, education, work experience, and RFC, plaintiff is capable of other work in the national economy. See 20 C.F.R. §§ 404.1520(f), 416.920(f). At this step, the burden of proof shifts to the agency to establish that plaintiff retains the RFC to engage in an alternative job which exists in the national economy. McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The agency must prove both plaintiff's capacity to perform the job and that the job is available. Grant v. Schweiker, 699 F.2d 189, 191 (4th Cir. 1983). Before the agency may conclude that plaintiff can perform alternative skilled or semi-skilled work, it must show that plaintiff possesses skills

that are transferable to those alternative positions or that no such transferable skills are necessary.  McLain, 715 F.2d at 869.  Here, the ALJ concluded that an individual of plaintiff's age, education, work experience, and RFC could perform jobs including the following: (1) bakery worker (60,000 jobs nationally and 300 regionally); or (2) garment bagger, (630,000 jobs nationally and 500 jobs regionally).  (R. 21).

Therefore, the ALJ concluded that plaintiff was not disabled, and had not been disabled since July 14, 2005, the date she filed her DIB application. (R. 10).[4]

## IV.  STANDARD OF REVIEW

The function of this Court on review is to leave the findings of fact to the agency and to determine upon the whole record whether the agency's decision is supported by substantial evidence—not to try plaintiff's claim *de novo*.  King v. Califano, 599 F.2d 597, 598 (4th Cir. 1979).  This Court must uphold the Commissioner's decision if it is supported by substantial evidence and if the ALJ employed the proper legal standards.  42 U.S.C. §§ 405(g), 1383(c)(3) (2001); Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).  Substantial evidence "consists

---

[4] The ALJ also determined that plaintiff met the insured status requirements of the Social Security Act through December 31, 2010.  (R. 12).

of more than a scintilla of evidence but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). It is "such relevant evidence as a reasonable mind might accept to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotations omitted).

In reviewing the decision, this Court will not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. Craig, 76 F.3d at 589; Hayes v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The Commissioner, as fact finder, is responsible for resolving conflicts in the evidence. Snyder v. Ribicoff, 307 F.2d 518, 520 (4th Cir. 1962). If the Commissioner's findings are supported by substantial evidence, this Court is bound to accept them. Underwood v. Ribicoff, 298 F.2d 850 (4th Cir. 1962).

Despite deference to the Commissioner's findings of fact, "a factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." Bowen, 829 F.2d 514, 517 (4th Cir. 1987). The Court has authority under 42 U.S.C. § 405(g) to affirm, modify, or reverse the decision of the agency "with or without remanding the case for a rehearing." Melkoyan v. Sullivan, 501 U.S. 89, 98 (1991).

**V.    DISCUSSION**

11

Plaintiff raises two arguments on appeal: (1) the ALJ improperly discredited the opinion of plaintiff's treating physician by failing to evaluate the opinion in accordance with the requirements under 20 C.F.R. § 404.1527(d); and (2) the ALJ improperly ignored some of plaintiff's psychological limitations. (ECF No. 19-1; ECF No. 31).[5] For the reasons set forth below, the Court agrees with Plaintiff's first argument, and disagrees with the second.

**A. The ALJ Improperly Evaluated the Opinion of Plaintiff's Treating Physician.**

The standard for reviewing and weighing medical opinions is set forth in 20 C.F.R. § 416.927(d), which states in pertinent part:

> [W]e give more weight to opinions from your treating sources, since these sources are . . . most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone . . . If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial

---

[5] As discussed below, plaintiff's arguments as to the context in which the ALJ improperly ignored those limitations changed between her motion for summary judgment (filed April 11, 2011) and her opposition to defendant's motion for summary judgment (filed November 14, 2011).

> evidence in your case record, we will give
> it controlling weight . . . We will always
> give good reasons . . . for the weight we
> give your treating source's opinion.

20 C.F.R. § 416.927(d)(2).  Therefore, opinions of treating

physicians which are supported by medically acceptable

techniques and are not inconsistent with other substantial

evidence in the record are to be given great weight.

Conversely, SSR 96-2p, 1996 SSR LEXIS 9 provides that a

medical opinion can *only* be given controlling weight if it is

(1) an actual opinion; (2) from a treating source; (3) well

supported by objective evidence; and (4) not inconsistent with

other substantial evidence in the case.

20 C.F.R. § 404.1527(d)(2) outlines the factors that an ALJ

must consider when determining whether to afford a treating

source's opinion controlling weight.  The factors are as

follows: (1) the "[l]ength of the treatment relationship and the

frequency of examination[;]" (2) the "[n]ature and extent of the

treatment relationship[;]" (3)  the extent to which the opinion

is supported by medical evidence of record; (4) the consistency

of the opinion with the record as a whole; (5) the

specialization of the treating physician (because the ALJ

generally gives more weight to specialists); and (6) "any

[other] factors . . . which tend to support or contradict the

opinion." 20 C.F.R. § 404.1527(d)(2).

Plaintiff argues that the ALJ's refusal to assign controlling weight to Dr. Grace-Lee's opinion is erroneous because the ALJ failed to explicitly discuss *every factor* in 20 CFR § 404.1527(d).[6] (ECF No. 19-1, 3). In fact, plaintiff argues that the only factor the ALJ addressed was the "nature and extent of treatment," and the ALJ's only comment relevant to that factor was that Ms. Baxter has not been hospitalized for any psychiatric problems. (Id.). Thus, plaintiff deems the

---

[6] Plaintiff also appears to argue that the ALJ's refusal to assign controlling weight to Dr. Grace-Lee's opinion is inconsistent with the following statement that the ALJ made during the hearing:

> [I]n looking at the assessment at 26F, completed by Grace Leigh, I will stipulate that that's an accurate assessment of the claimant's functioning. There is no work she could do.

(ECF No. 19-1, 2). Later, plaintiff argues that "[s]ince the ALJ 'stipulated' that Dr. Grace-Lee's opinion would justify a finding of disabled, we request that the Court reverse the final decision of the Commissioner . . . ." (Id. at 4). However, plaintiff states in a footnote that "[p]laintiff's counsel will assume that the ALJ must have mis-spoke at the hearing since his decision is obviously inconsistent with" the statement the ALJ made at the hearing. (Id. at 2). Plaintiff's assumption is completely inconsistent with her argument. The Court agrees with Plaintiff that the ALJ misspoke at the hearing. It appears that the crucial word "if" was omitted. The statement should probably have read: "I will stipulate that [**if**] that's an accurate assessment of the claimant's functioning[,] [t]here is no work she could do."

14

ALJ's assessment of Dr. Grace-Lee's opinion erroneous. The Court agrees that the ALJ improperly evaluated Dr. Grace-Lee's opinion, although for different reasons.

Nothing in § 404.1527(d)(2) requires an express discussion of each factor. See 20 C.F.R. § 404.1527(d)(2).  Although the Fourth Circuit has not yet addressed whether an ALJ must explicitly analyze every factor, several district courts within the Fourth Circuit have not found such a requirement.  See, e.g., Hilton v. Astrue, 2011 U.S. Dist. LEXIS 133988, at *8 (D.S.C. Nov. 21, 2011) ("[E]ven if the ALJ is not required to name each factor, the ALJ's decision must nonetheless be 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'") (quoting SSR 96-2p, 1996 SSR LEXIS 9); Overcash v. Astrue, 2010 U.S. Dist. LEXIS 141695, at *16-17 (W.D.N.C. May 21, 2010) ("While an ALJ's decision need not explicitly discuss each factor [set forth in 20 C.F.R. § 404.1527(d)(2)], it must justify the amount of weight afforded with specific reasons."); Hendrix v. Astrue, 2010 U.S. Dist. LEXIS 90922, at *7-8 (D.S.C. Sept. 1, 2010) ("[A]n express discussion of each factor is not required as long as the ALJ demonstrates that he applied the § 404.1527(d) factors and provides good reasons for his decision."); Clay v.

15

<u>Astrue</u>, 2008 U.S. Dist. LEXIS 116554, at *47-48 (N.D. W. Va. Oct. 24, 2008) ("[W]hile the ALJ did not explicitly and specifically reference every factor enumerated in § 404.1527(d)(2) . . . he summarized almost the entire medical record before him . . . [and] properly determined that the opinions of [the treating physicians] were not entitled to great weight."); <u>Munson v. Astrue</u>, 2008 U.S. Dist. LEXIS 100273 (E.D.N.C. Dec. 8, 2008) ("Contrary to plaintiff's contention, the ALJ need 'not explicitly discuss all the § 404.1527(d) factors for each of the medical opinions,' as long as good reasons are provided for the assigned weight") (citations and quotations omitted); <u>see also</u> <u>Oldham v. Astrue</u>, 509 F.3d 1254, 1258 (10th Cir. 2007) ("[Plaintiff] cites no law, and we have found none, requiring an ALJ's decision to apply expressly each of the six relevant factors in deciding what weight to give a medical opinion[,]" especially since "as the Commissioner has recognized, '[n]ot every factor for weighing opinion evidence will apply in every case.'")(internal citation omitted). However, at least one district court within the Fourth Circuit has required explicit discussion of each factor. <u>See</u> <u>Jefferson v. Comm'r of Soc. Sec.</u>, C/A No. 6:02-3470-17AK (D.S.C. Feb. 18, 2004) (interpreting <u>Burch v. Apfel</u>, 9 Fed. Appx. 255, 2001 WL 574634, at *4 (4th Cir. 2001) as presuming an express discussion

16

of each factor).

Thus, it is not entirely clear whether the ALJ must explicitly "check off" every § 404.1527(d)(2) factor.[7] What *is* clear under Fourth Circuit law is that the ALJ must at least indicate that he or she was aware of and considered all of the factors. Burch, 2001 WL 574634, at *259-60.

In this case, it is sufficiently clear that (1) the ALJ recognized Dr. Grace-Lee's specialty as a psychiatrist; and (2) the ALJ considered the consistency of Dr. Grace-Lee's opinion with the other medical evidence and the record as a whole. However, the Court is *not* confident that the ALJ considered the length, frequency and nature of the treatment relationship.

As far as the ALJ's consideration of Dr. Grace-Lee's specialization, it is highly likely that the ALJ understood Dr. Grace-Lee's specialty as a psychiatrist. Although the ALJ did not explicitly refer to Dr. Grace-Lee as a psychiatrist in his written opinion, he did so on multiple occasions during the hearing. (See R. 26-27, 34, 48). Further, at several points in the written opinion, the ALJ cited to the mental RFCA completed by Dr. Grace-Lee. (E.g., R. 14, 19). Moreover, the record

---

[7] While the Court believes it is the better practice for the ALJ to discuss all the factors (as it assures the reviewing court of careful consideration), failure to do so does not compel a remand in all cases.

indicates that Dr. Grace-Lee practiced with "Bay Region

Psychiatric Services" (<u>see</u>, e.g., R. 294, 353), and "White Marsh

Psychiatric Associates" (<u>see</u>, e.g., R. 346). The ALJ cited

those portions of the record extensively. (<u>See</u> R. 13-14, 17,

19). The ALJ also recognized that Dr. Grace-Lee was a medical

doctor (a psychiatrist, as opposed to a psychologist) by

including the suffix "M.D." after her name on several occasions

throughout his written opinion. (<u>Id.</u>).

The Court is also satisfied that the ALJ considered a

comparison between Dr. Grace-Lee's opinion and the medical and

other evidence of record. The ALJ explicitly stated that:

> The opinions of Dr. Grace-Lee are . . . not
> supported by the evidence of record,
> including the claimant's own report of daily
> activities and the claimant's history of
> conservative treatment all of which has been
> discussed above.

(R. 19). However, the Court notes that that consideration was

inadequate. The above statement is conclusory, without

supporting facts. An ALJ's determination must "contain specific

reasons for the weight given to the treating source's medical

opinion, supported by the evidence in the case record, and must

be sufficiently specific to make clear to any subsequent

reviewers the weight the adjudicator gave to the treating

source's medical opinion and the reasons for that weight." SSR

96-2, 1996 SSR LEXIS 9; see also Pusey v. Astrue, 2011 U.S.

Dist. LEXIS 14229, at *17 (D. Md. Feb. 14, 2011) (deeming an

ALJ's statement that a treating source's conclusions were

"inconsistent with the record and his own treatment notes"

insufficient justification for refusing to assign controlling

weight to a treating source opinion).  Although the ALJ

summarized almost the entire medical record before him, he did

not explicitly state *which* pieces of evidence in the record

(including the reports of daily activity and treatment history)

contradict Dr. Grace-Lee's opinion.  Thus, his reasoning is not

sufficiently clear to the reviewer.  The ALJ must be more

specific on remand.[8]

Turning to the next factor, the Court is *not* satisfied that

---

[8] In further support of the argument that the ALJ improperly
dismissed Dr. Grace-Lee's opinion, Plaintiff cites a case out of
the Eastern District of New York, Harnisher v. Apfel, 40 F.
Supp. 2d 121, 129 (E.D.N.Y. 1999) (remanding an ALJ's refusal to
assign controlling weight to a treating source's opinion simply
because the opinion was inconsistent with the claimant's
testimony that he uses over the counter medication, can walk ¾
of a mile, and can drive).  The Court agrees that the ALJ's
comparison of Dr. Grace-Lee's opinion with the rest of the
record was insufficient, but does not consider Harnisher
persuasive.  Besides the fact that Harnisher is not controlling
law, it is distinguishable.  The ALJ here deemed Dr. Grace-Lee's
opinion inconsistent with the *evidence of record generally*,
including claimant's report of daily activities and the evidence
of conservative treatment.  (R. 19).  The ALJ's rational was not
limited to several statements made by Plaintiff.  Had the ALJ in
this case provided specific examples of evidence that
sufficiently showed conflict with Dr. Grace-Lee's opinion, the
ALJ's reasoning may have been sufficient to withstand challenge.

the ALJ appreciated the length, frequency or nature of Dr.

Grace-Lee's treatment of Plaintiff.  The ALJ's opinion notes

that Plaintiff's symptoms of depression began in 1992, but does

not note that Dr. Grace-Lee began treating Plaintiff at that

time.  At the time of the ALJ's written opinion (April 1, 2009),

Dr. Grace-Lee had treated Plaintiff for about seventeen years.

Nowhere does the ALJ acknowledge that significant span of

treatment.  Although the ALJ cites to Dr. Grace-Lee's treatment

notes (R. 294-303, 353-366) in describing Plaintiff's medical

history, those notes only cover the period between March 26,

2004 and September 24, 2008.  The Court does not know whether

the ALJ appreciated the twelve years of treatment prior to that

period of time.  Further, the ALJ never acknowledged the

frequency of Dr. Grace-Lee's treatment.  As stated above, the

record indicates that Plaintiff saw Dr. Grace-Lee on a regular

basis, with frequency ranging from once every two months, to

once every month, to once every three to four weeks.  (R. 268,

313, 353-366).  The Court has no way of knowing whether the ALJ

appreciated the frequency and regularity of treatment before

rejecting Dr. Grace-Lee's opinion.

   Accordingly, the Court is not confident that the ALJ

considered all the factors set forth in § 404.1527(d), and a

remand is necessary.

**B. The ALJ Adequately Addressed Plaintiff's Psychological
   Limitations in Both His RFC Assessment and His Hypothetical
   to the VE.**

During the hearing, the ALJ posed the following hypothetical

to the VE:

> Assume an individual the claimant's age,
> education and work experience and was [sic]
> limited to light work. Non-exertionally,
> limited to routine, repetitive tasks, which
> means the individual is incapable of details
> for complex task[s] as required by skilled
> [inaudible] labor. Only incidental public
> contact and no reaching above shoulder
> level. . . . Are there any unskilled jobs
> the individual could perform?

(R. 44). The VE responded that such an individual could work as

a bakery worker on a conveyor line or as a garment bagger. (R.

45). In his written decision, the ALJ determined that plaintiff

retained the RFC contained in that hypothetical (specifically,

plaintiff can perform light work that is limited to routine,

repetitive tasks, has no overhead reaching, and requires only

incidental public contact). (R. 16). Accordingly, the ALJ

determined that plaintiff was capable of performing jobs that

exist in significant numbers in the national economy, such as

bakery worker and garment bagger. (R. 20-21).

In plaintiff's memorandum in support of her motion for summary

judgment, she argues that, although the ALJ found that Dr.

Walcutt's opinion was entitled to significant weight, the ALJ's

hypothetical question failed to include all of the mental
limitations described by Dr. Walcutt. (ECF No. 19-1, 5).
Specifically, plaintiff argues that "the ALJ's hypothetical
question did not take into account Dr. Walcutt's opinion that
Ms. Baxter has a moderate [sic] limitations in performing within
a schedule, maintaining regular attendance, and responding to
changes in a work setting." (Id). Plaintiff did concede,
however, that the ALJ's *RFC assessment* did include those
limitations, stating:

> In any his [sic] decision the ALJ described
> all of the mental limitations that Dr.
> Walcutt found, including moderate
> limitations in performing activities within
> a schedule, maintaining regular attendance,
> complete [sic] a normal workday and
> workweek, and respond [sic] to changes in
> the work setting.

(Id.).

   Defendant countered in its motion for summary judgment that
the ALJ's hypothetical was completely consistent with his RFC,
(ECF No. 24-1, 14), which plaintiff had not challenged.

   In response, plaintiff argued that "[t]he ALJ erred by not
including in his *RFC assessment and hypothetical question*" some
of the moderate mental limitations found by Dr. Walcutt,
including, *inter alia*, limitations in plaintiff's "ability to
perform activities within a schedule, to maintain regular
attendance, and to respond appropriately to changes in the work

setting."[9] (ECF NO. 31, 5-6) (emphasis added).

Plaintiff's latter argument completely contradicts the concession she made in her memorandum in support of summary judgment, and the Court finds no merit in it. Plaintiff was correct the first time when she acknowledged the ALJ's consideration of the mental limitations in his RFC assessment. The ALJ explicitly stated the following in his opinion:

> Dr. Walcutt, Ph.D., a State agency medical expert, reviewed the evidence of record and opined the claimant has moderate limitations on her ability to . . . perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, . . . [and] respond appropriately to changes in the work setting.

(R. 18-19). The ALJ concluded that "Dr. Walcutt's opinions are entitled to significant weight *to the extent they are consistent with the above residual functional capacity* found by the undersigned." (R. 19) (emphasis added). The ALJ's consideration of Dr. Walcutt's findings was adequate. Thus, the ALJ's hypothetical, which mirrored the RFC, was also adequate.

---

[9] In support of this second argument, plaintiff cites a recent opinion by Judge Gallagher, <u>Good v. Astrue</u>, No. SAG-09-2030, District of Maryland, September 27, 2011) (remanding DIB and SSI determination where ALJ failed to discuss many of claimant's moderate limitations in function-by-function RFC analysis). That case is distinguishable. As discussed below, both the ALJ's RFC assessment and the ALJ's hypothetical in this case *do* include the three moderate mental limitations that plaintiff claims are absent from the RFC assessment and hypothetical.

## VI.  CONCLUSION

For the reasons set forth above, the Court finds that, although the ALJ adequately addressed Dr. Walcutt's opinions concerning plaintiff's moderate mental limitations in both his RFC assessment and his hypothetical, the ALJ improperly evaluated the opinion of Dr. Grace-Lee.  Accordingly, the Court DENIES plaintiff's motion for summary judgment (ECF No. 19), DENIES defendant's motion for summary judgment (ECF No. 24), and REMANDS for action consistent with this opinion.

Despite the informal nature of this letter, it shall constitute an Order of the Court, and the Clerk is directed to docket it accordingly.

Sincerely yours,

/s/

Susan K. Gauvey
United States Magistrate Judge
